```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA,            :
                                     :          **MEMORANDUM AND ORDER**
            -against-                :          18-cr-224 (DLI)
                                     :
                                     :
MALIKE LEGREE,                       :
                                     :
                 Defendant.          :
-------------------------------------------------------x
```

**DORA L. IRIZARRY, Chief United States District Judge:**

Defendant Malike Legree ("Defendant") is charged by indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (Indictment, Docket Entry No. 7.) On June 25, 2018, Defendant moved to suppress evidence of the firearm found by the police in a potato chip bag at his feet during a traffic stop of the vehicle in which he was a passenger. He also moved to suppress his statements that Defendant claims were elicited in violation of his Fifth Amendment rights. The Court held a suppression hearing on August 22 and 29, 2018. For the reasons that follow, Defendant's motion is denied in its entirety.

**I.     FINDINGS OF CREDIBILITY**

At the suppression hearing, the government presented the testimony of three officers with the New York City Police Department ("NYPD"). At the time of the hearing, Detective Thaddeus Grandstaff ("Det. Grandstaff") had been a police officer with the NYPD for seven years, and a detective for approximately nine months. (Suppression Hearing Transcript, August 22 and 29, 2018 ("Tr."), 13:3-8.) Sergeant Kieran Fox ("Sgt. Fox") had been a police officer for over eighteen years, and a sergeant for six years. (Tr. 96:15-18.) At the time of the hearing, Detective Reginald Smith ("Det. Smith") had been employed with the NYPD for slightly over seven years. (Tr. 150:24-25; 151:1-9.) He had been assigned to the Brooklyn North Anticrime Unit for

approximately two and a half years. (Tr. 151:2-12.) The Court finds the testimony of Det. Grandstaff, Sgt. Fox, and Det. Smith credible.

Defendant did not testify at the suppression hearing, nor did he present any evidence. He submitted an affidavit attached to his motion to suppress in which he states, among other things, that he "was not engaged in any criminal activity, nor was the driver or other passenger of the vehicle." (Docket Entry No. 14-1, ¶ 2.) The Court finds the Defendant's conclusory and self-serving affidavit not credible.

## II. FINDINGS OF FACT

### A. The Traffic Stop and Arrest

In the early morning hours of April 14, 2018, Det. Grandstaff and Sgt. Kiernan Fox were on patrol in an unmarked vehicle in Brooklyn's 73rd Precinct, which they knew suffered from a high volume of violent crime. (Tr. 76:3, 118:5.) The officers were aware of a "block party" going on in the neighborhood housing projects, and were in the area to address potential criminal activity. (Tr. 98:20-25.) The officers observed a silver Chrysler 300 with air fresheners hanging in the rearview mirror in violation of New York law. (Tr. 20:8-14.) The officers decided to follow the Chrysler after observing the car turn abruptly in what they suspected was an effort to avoid marked police cars in its path. (Tr. 21:5-8; 100:22-24.) Once behind the Chrysler, the officers noticed that the vehicle did not have proper lighting over the license plate in violation of New York law and repeatedly engaged the left turn signal without turning. (Tr. 26:3-28:1; 71:15, 103:3.) They initiated a traffic stop. (Tr. 23:6.)

Upon stopping the vehicle, Sgt. Fox approached the driver, Marlon Sealey ("Sealey"), and Det. Grandstaff approached the front passenger, Kizer Williams ("Williams"). (Tr. 30:1-7.) Defendant was seated in the rear of the vehicle behind the front passenger. (Tr. 30:11.) Sgt. Fox

asked Sealey for his driver's license, and Sealey produced a tattered, illegible piece of paper that appeared to have been issued by the New York State Department of Motor Vehicles. (Tr. 31:15-25.) Sgt. Fox also noticed the smell of marijuana and alcohol coming from the vehicle and that the driver's eyes appeared "watery." (Tr. 105:15-17.) In addition, Det. Grandstaff noticed that Williams's hand was shaking. (Tr. 34:12.)

When Sgt. Fox asked Sealey to turn off the engine Sealey refused, stating in substance that, if he turned off the engine, it would not start again. (Tr. 31:21-23.) Sgt. Fox radioed for backup. (Tr. 128:22-24.) Sgt. Fox then asked the driver to step out of the vehicle and walked him to the back of the car. (Tr. 109:4-7.) From there, Sgt. Fox witnessed Defendant lean back in his seat and reach downward toward his waist. (Tr. 109:10-14.) Sgt. Fox then leaned around the side of the vehicle to view Defendant through the rear window on the driver's side, which was open. (Tr. 105:13.) He saw Defendant remove a black object from his waistband, lean forward, and place the object into an open bag of Wise brand potato chips lying on his lap. (Tr. 108:11-14; 109:1-18; 132:6-12.) Sgt. Fox told Defendant to stop moving around in the backseat. (Tr. 34:24-25; 76:23-24.) Defendant responded, "I'm just grabbing my drink." (Tr. 108:14.) Sgt. Fox observed Defendant reach with his right arm across his body to retrieve a can of an Arizona brand drink from the center console. (Tr. 34:17-18.)

Det. Smith arrived at the scene in response to the call for backup. From opposite the driver's side, near the rear passenger, Det. Smith noticed a folding knife on the floor of the backseat. (Tr. 158:15-25.) He ordered Defendant to "stop reaching for that knife," to which Defendant responded, "It's just a knife." (Tr. 36:19-23; 158:20-23; 159:7-9.) Within moments thereafter, Sgt. Fox shoved Det. Smith aside, opened the back door of the vehicle, and brought Defendant around to the back of the car. (Tr. 111:1-7; 159:10-13.) The timespan from the moment

3

Sgt. Fox brought Sealey to the back of the car to the time he pulled Defendant out of the car was about "a minute, minute and a half." (Tr. 111:23.) Once Defendant was secured outside the car, Sgt. Fox searched the floor of the backseat and discovered a loaded 9mm Smith and Wesson semi-automatic pistol in the potato chip bag. (Tr. 112:1-10.) The officers arrested all three occupants and brought them to the 73rd Police Precinct for processing. Upon his arrest, Defendant spontaneously stated, "I'm big blood. I'm big blood." (Tr. 86:25-87:7; 90:9-10.) He also stated "fuck, I just had a daughter." (Tr. 86:21-22; 90:12.)

B.  Defendant's Statements at the Precinct

As Det. Grandstaff was taking pedigree information from Defendant, he overheard Defendant tell Sealey and Williams "Yo, I got this. I'm gonna take the charge. I got this. I got this." (Tr. 45:6-8; 87:12-14.) Before Defendant made this statement to Sealey and Williams, Det. Grandstaff had not asked Defendant any questions other than for pedigree information. Contrary to the credible police officer testimony at the suppression hearing, Defendant's affidavit submitted with his Motion to Suppress self-servingly states:

> After I arrived at the 73rd police precinct, NYPD officers again questioned me. I made statements in response to those questions. I made these statements in response to the officers' questions before they read me my *Miranda* rights.

(Docket Entry No. 14-1, ¶ 18.)

After Det. Grandstaff obtained Defendant's pedigree information, Defendant was brought into an interview room and read his *Miranda* warnings. (Tr. 46:9-10.) Defendant then asked for a lawyer. (Tr. 46:14-15.) The interview ceased, and Defendant was brought downstairs and placed in a cell without being questioned by an officer. (Tr. 46:16-19.) About two hours later, Det. Grandstaff went to the cell where the detainees were kept and asked, in substance, "Is everything alright?" (Tr. 46:23-47:1.) Defendant responded, in substance, "I just want to get this over with. Take me back upstairs." (*Id.*) Det. Grandstaff brought Defendant upstairs. Other detectives

4

observed Det. Grandstaff bring Defendant upstairs and stopped him, saying in substance, "What are you doing? The guy asked for his lawyer." (Tr. 446:25-47:1.) At that point, Det. Grandstaff returned Defendant to his cell downstairs and did not question him.

C. Procedural Background

On June 25, 2018, Defendant filed his Motion to Suppress the firearm and his statements. (Def's Mot. to Supp, Docket Entry No. 14.) The government opposed the motion. (Govt's Mem. in Opp'n, Docket Entry No. 15.) Defendant waived his right to reply. (Def's Ltr. dated July 20, 2018, Docket Entry No. 17.)

The suppression hearing was held on August 22 and 29, 2018. The parties submitted post-hearing briefing. (Def's Post-Hrg Br., Docket Entry No. 32; Govt's Post-Hrg Br., Docket Entry No. 33; Def's Reply to Resp., Docket Entry No. 34.) Defendant argues that the firearm and his statements should be suppressed because: (1) the initial traffic stop was not supported by reasonable suspicion; (2) the officers lacked probable cause to search the backseat of the vehicle; and (3) his statements at the scene and at the precinct were the product of custodial interrogation in violation of his Fifth Amendment rights.

III. CONCLUSIONS OF LAW

A. The Traffic Stop Was Supported by Reasonable Suspicion

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. This protection extends to vehicles. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). "[T]he Fourth Amendment requires that an officer making a traffic stop have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity." *United States v. Wilson*, 699 F.3d 235, 242 (2d Cir.

2012) (citation and internal quotation marks omitted). A passenger may challenge the constitutionality of a traffic stop. *See Brendlin v. California*, 551 U.S. 249 (2007).

Based on the facts and circumstances of this case, the Court finds that the officers had reasonable suspicion to stop the vehicle. At the suppression hearing, Sgt. Fox and Det. Grandstaff testified that, prior to the traffic stop, they had observed items hanging from the rearview mirror and the car did not have a light over its rear license plate, both in violation of New York law.[1] The government also submitted a photograph of the Chrysler's license plate taken on the night of Defendant's arrest, which clearly shows that the light above the license plate is missing entirely. Moreover, the officers observed the car being driven in such a way as to avoid marked police cars and turn without signaling in a high crime area.

Defendant stated in his affidavit attached to his suppression motion that he "was not engaged in any criminal activity, nor was the driver or other passenger of the vehicle." (Docket Entry No. 14-1, ¶ 2.) This conclusory and self-serving declaration, without more, is insufficient to overcome the credible testimony of the officers and the photographic evidence in the record. Even crediting Defendant's affidavit, it could very well be the case that he was unaware of the missing light on a car that was not his. However, it does not explain the other traffic violations such as a failure to signal when turning and does not invalidate the basis of the traffic stop.

The Court credits the government's evidence and finds that the traffic stop was properly founded on the officers' reasonable suspicion that the driver of the Chrysler was in violation of New York law.

---

[1] *See* New York Vehicle & Traffic Law Section 375(2)(a)(4).

B.     Defendant Lacks a Reasonable Expectation of Privacy in the Area Searched

"It has long been the rule that a defendant can urge the suppression of evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates that *his* Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Padilla*, 508 U.S. 77, 81 (1993) (citing *Alderman v. United States*, 394 U.S. 165, 171-72 (1969) (additional citations omitted)). When considering a claimed violation of Fourth Amendment rights, the burden is on the defendant to establish that his own rights under the Fourth Amendment were violated. *United States v. Paulino*, 850 F.2d 93, 96 (2d Cir. 1988). A defendant's mere presence in an automobile is insufficient to establish a Fourth Amendment right to challenge its search. *Id.* at 97. Non-owner passengers in a vehicle generally do not have a reasonable expectation of privacy in the vehicle. *Rakas v. Illinois*, 439 U.S. 128, 148-49 (1978).

Whether a defendant has a reasonable expectation of privacy in the area searched requires a two-step inquiry:

> A defendant seeking to suppress the fruits of a search by reason of a violation of the Fourth Amendment must show that he had a "legitimate expectation of privacy" in the place searched. . . . This inquiry involves two distinct questions: first, whether the individual had a subjective expectation of privacy; and second, whether that expectation of privacy is one that society accepts as reasonable.

*United States v. Hamilton*, 538 F.3d 162, 167 (2d Cir. 2008) (internal citations omitted).

Here, Defendant fails to establish a subjective expectation of privacy. He baldly asserts in his moving papers that he had a reasonable expectation of privacy in the "area where he was seated and of the bag that was immediately at his feet." (Def. Mot. to Supp. (Docket Entry No. 14) at 5.) However, neither Defendant's affidavit nor the evidence adduced at the hearing establish that Defendant had any ownership or possessory interest in the vehicle, the potato chip bag, or the firearm. Without any such evidence, the Court cannot find that he had a subjective expectation of privacy. *See Rakas*, 439 U.S. at 148 (finding that defendants lacked standing because "[t]hey

asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized"); *United States v. Smith*, 621 F.2d 483, 487 (2d Cir. 1980) (defendants had no legitimate expectation of privacy in the trunk of a car where they did not assert ownership of car, knowledge of trunk's contents, or access to trunk); *United States v. Ulbricht*, 2014 WL 5090039, at *6 (S.D.N.Y. Oct. 10, 2014) (finding that a defendant's expectation of privacy must "be established by a declaration or other affirmative statement of the person seeking to vindicate his or her personal Fourth Amendment interest in the thing or place searched.").

Were Defendant to argue that the bag was his, he may be able to satisfy the subjective prong of the analysis. *See United States v. Bulluck*, 2010 WL 1948591, at *10 (S.D.N.Y. May 13, 2010) (holding that by attempting to hide a plastic bag containing crack cocaine under the front seat of a cab, defendant demonstrated a subjective expectation of privacy in the area in and around the floor underneath the driver's seat). However, his affidavit states only that "[d]uring the time of the stop there was a Wise Chips bag between my feet on the floor of the car." (Docket Entry No. 14-1 ¶ 9.) Defendant has not established that he owned the bag or otherwise had a subjective expectation of privacy in the bag. Moreover, the officers also had a right, during a traffic stop, to search the area surrounding a suspect for their own safety. *See Paulino*, 850 F.2d at 97 (citing *Michigan v. Long*, 463 U.S. 1032, 1049 (1983)).

As for the objective prong, Defendant has not submitted any facts sufficient to overcome the "well settled" notion that "non-owner passengers cannot bring a Fourth Amendment challenge to a search of the interior of a vehicle because they do not possess a reasonable expectation of privacy in a vehicle that is not their own. *See Bulluck*, 2010 WL 1948591, at *11 (citing *Rakas*, 439 U.S. at 148). Defendant was not driving the vehicle, was not alone in the vehicle, and had no "right to exclude others from the vehicle." *Paulino*, 850 F.2d at 97.

Defendant cites *Byrd v. United States* for the notion that as a passenger, he may invoke the exclusionary rule without a possessory interest in the vehicle. 138 S.Ct. 1518 (2018). However, *Byrd* is inapposite as that case concerned the sole occupant and driver of a rental car, whom the Court presumed had some modicum of possession and control, unlike a passenger of a vehicle as in the instant case.

Accordingly, the Court finds that Defendant did not have a reasonable expectation of privacy in the backseat of the vehicle and the potato chip bag and, therefore, lacks standing to challenge the search.

### C. Sergeant Fox Had Probable Cause to Search the Backseat of the Vehicle

Notwithstanding the fact that Defendant does not have a Fourth Amendment interest in the area searched, the Court finds that Sgt. Fox had probable cause to search the area of the backseat of the vehicle.

Under the "automobile exception" to the Fourth Amendment warrant requirement, police may conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime. *See United States v. Navas*, 597 F.3d 492, 497 (2d Cir. 2010); *United States v. Gaskin*, 364 F.3d 438, 456 (2d Cir. 2004). "Where the probable cause upon which the search is based 'extends to the entire vehicle,' the permissible scope of a search pursuant to this exception includes 'every part of the vehicle and its contents [including all containers and packages] that may conceal the object of the search.'" *United States v. Navas*, 597 F.3d 492, 497 (2d Cir. 2010) (quoting *United States v. Harwood*, 998 F.2d 91, 96 (2d Cir. 1993)). "Even where there is not probable cause to search an entire vehicle, 'police may conduct a warrantless search of a container within a vehicle if they have probable cause to believe that the container holds contraband or evidence.'" *United States v. Bulluck*, 2015

9

WL 4998573, at *6 (S.D.N.Y. Aug. 20, 2015) (quoting *United States v. DiMarco*, 2013 WL 444764, *8 n. 6 (S.D.N.Y. Feb. 5, 2013)).

As the Supreme Court has explained, "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). The standard does not demand certainty, but only a "'fair probability that contraband or evidence of a crime will be found in a particular place.'" *Ganek v. Leibowitz*, 874 F.3d 73, 82 (2d Cir. 2017) (citing *Gates*, 462 U.S. at 238); *accord*, *United States v. Harwood*, 998 F.2d 91, 96 (2d Cir. 1993). "Further, courts recognize that experience and training may allow a law enforcement officer to discern probable cause from facts and circumstances where a layman might not." *Gaskin*, 364 F.3d at 457.

Before he searched the backseat of the vehicle, Sgt. Fox knew that: (1) the vehicle had been driven erratically, possibly avoiding marked police cars and using its turn signal inconsistently; (2) the 73rd Precinct suffers from a high volume of violent crimes; (3) there was a heightened police presence in the area due to a street festival; (4) the driver's eyes appeared watery and there was an odor of marijuana and alcohol coming from the vehicle; (5) the driver did not have a valid driver's license; (6) the driver refused to shut off the engine when asked; (7) Defendant made furtive movements in the backseat, including grabbing a black object from near his waist area and concealing it in a potato chip bag; and (8) Det. Smith told Defendant to stop reaching for a folding knife clearly visible on the floor and Defendant did not comply.

The totality of these circumstances established probable cause to believe that contraband or other evidence of a crime likely would be found in the car, including inside the chip bag. *See United States v. Pughe*, 441 F. App'x 776, 778 (2d Cir. 2011) (probable cause valid where officer observed defendant "make furtive movements as [the officer] approached the vehicle, and [the

10

officer] knew, based on his experience with narcotics-related incidents . . . [that] oftentimes the persons will make some attempt to conceal the narcotics"). Accordingly, even if Defendant had standing to challenge the search, his motion to suppress the firearm would be denied because the officers had probable cause to search the rear area of the vehicle where Defendant was seated and the potato chip bag where he clearly placed an object.

        D.        <u>Defendant's Statements Are Admissible</u>

Defendant seeks to suppress the statements he made at the scene of the traffic stop and later at the 73rd Precinct after his arrest, claiming the officers violated his Fifth Amendment rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). He does not identify which statements should be suppressed. Instead, he argues generally that "[a]t all points [he] was in the custody of law enforcement" and "was in custody at the time that he made statements on the scene and at the precinct." (Def's Mot. to Supp. at 16.)

To protect a person's Fifth Amendment right against self-incrimination, the Supreme Court in *Miranda v. Arizona* ruled that police may not interrogate a suspect who has been taken into custody without first warning the person of his or her right to remain silent and obtain counsel. *United States v. Newton*, 369 F.3d 659, 668 (2d Cir. 2004). "*Miranda*'s warning requirements apply only to 'custodial interrogation.'" *Id.* at 669 (quoting *Miranda*, 384 U.S. at 477). Motorists subjected to routine traffic stops generally are "not 'in custody' for the purposes of *Miranda*." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984). "The 'ultimate inquiry' for determining *Miranda* custody . . . is . . . 'whether there is a formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest.'" *Newton*, 369 F.3d at 670 (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)); *See also*, *United States v. Fernandez-Jimenez*, 2004 WL 1598653, at *5 (S.D.N.Y. July 16, 2004) ("Although motorists do not feel free to leave, traffic stops are not

a form of custodial interrogation because they are brief and public.") (citing *Berkemer*, 468 U.S. at 438-39).

Defendant has not provided a reason to depart from the general rule that police questioning during a traffic stop is a non-custodial interrogation. The stop was ordinary and routine. It lasted mere minutes and Defendant was still seated in the backseat of the vehicle when Sgt. Fox told him to "stop moving around," to which he responded, "I'm just grabbing my drink." Det. Smith told Defendant to "stop reaching for that knife," to which Defendant responded, "it's just a knife." None of these directives were questions designed to elicit answers, but rather to stop Defendant from moving around in the vehicle. This encounter was not custodial. Accordingly, Defendant's motion to suppress his statements at the scene of the arrest is denied.

In addition, Defendant's statement at the precinct to Sealey and Williams that he would "take the charge" did not violate *Miranda* because it was a spontaneous utterance by Defendant not elicited by an officer. Instead, it was a statement made by Defendant to third parties that was overheard by Det. Grandstaff. *See, e.g.*, *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980) (statement must be the product of "express questioning or its functional equivalent" to violate *Miranda*); *Patterson v. New York*, 2010 WL 1438216, at *6 (E.D.N.Y. Apr. 9, 2010) ("voluntary or spontaneous statements, which do not result from 'official interrogation,' have never been subject to the bounds of *Miranda*"). As the credible evidence at the hearing showed, the only questions Det. Grandstaff asked Defendant were simple pedigree questions that were not "reasonably likely to elicit an incriminating response." *Innis*, 446 U.S. at 302.

Lastly, Defendant objects to the admission of his post-*Miranda* statement that he wanted to "get this over with," which prompted Det. Grandstaff to bring Defendant upstairs for questioning. This statement was in response to Det. Grandstaff's general question to the prisoners

whether "everything was alright." (Tr. 46:22-47:1.) While this question was custodial and made after Defendant invoked his *Miranda* rights, Defendant's response was not the product of interrogation because Det. Grandstaff's question whether the detainees were "alright" was not reasonably likely to elicit an incriminating response. *See United States v. Broughton*, 983 F. Supp.2d 224, 231 (E.D.N.Y. 2013), *aff'd*, 600 F. App'x 780 (2d Cir. 2015) ("Volunteered information, as [defendant]'s statement appears to be, does not implicate *Miranda* even when the speaker is in custody."); *United States v. Jacobson*, 4 F. Supp.3d 515, 533 (E.D.N.Y. 2014) (holding officer's small talk "about the weather and his family . . . were not reasonably likely to elicit an incriminating response") (citing cases). Thus, Defendant's motion to suppress his post-arrest statements is denied.

IV. **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Suppress physical evidence and statements is denied in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
      March 22, 2019

                                              /s/
                                  DORA L. IRIZARRY
                                     Chief Judge